[No. D006523. Fourth Dist., Div. One. July 27, 1989.]

MARYLAND CASUALTY COMPANY, Plaintiff and Appellant, v. IMPERIAL CONTRACTING COMPANY, INC., Defendant and Appellant.

713

COUNSEL

Ault, Deuprey, Jones, Danielson & Gorman, Kevin Midlam, Graham S. P. Hollis and Robert P. Coffin for Plaintiff and Appellant.

Solomon, Ward, Seidenwurm & Smith, William O. Ward III and Miguel A. Smith for Defendant and Appellant.

## OPINION

TODD, J.—Both Plaintiff Maryland Casualty Company (Maryland) and Defendant Imperial Contracting Company, Inc. (Imperial) appeal a judgment entered after each party moved for summary judgment in Maryland's action for declaratory relief seeking a declaration there is no coverage under policies of insurance Maryland issued to Imperial. The judgment declares that there is no coverage under the policies Maryland issued to Imperial, but Maryland is not entitled to recover from Imperial the amount of a good faith settlement within the policy limits, which Maryland entered while defending Imperial under a reservation of rights to contest coverage.

■ This case presents the primary question: May an insurer ultimately determined to have issued a policy that excludes coverage of the claim against its "insured" recover from the insured the amount of a good faith settlement entered: (a) while, with a reservation of rights to contest coverage, the insurer was defending the underlying action (former action) against the insured and litigating the coverage issue; and (b) after the insurer requested assent of the insured to the proposed settlement, giving the insured notice the coverage issue would continue to be pursued, and the insured rejected that request; and (c) after the insurer obtained trial court permission to participate in the settlement by an order allowing the insured later to contest the fact of liability and the reasonableness of any sum paid in settlement?

We conclude under these circumstances the insurer is entitled to seek to recover from the insured the amount expended in the settlement. We thus reverse the judgment insofar as it denies the insurer the right to seek recovery of the amount paid in the good faith settlement subject to offset. We affirm the judgment to the extent it declares there is no coverage under the policies of insurance at issue.

### FACTS

On February 9, 1984, Canyon Woods Management Corporation (Canyon Woods), a homeowners association for a condominium complex developed by a joint venture of which Imperial was a member, sued Imperial and others for damages for alleged defects in the construction. (San Diego Superior Court No. 516175; here, the former action.)

It is undisputed the complaint in the former action sought recovery for damages to property of the homeowners of the condominium complex. The complaint: (a) alleged loss as a result of damage to the individual

homeowner's interiors and personal property; (b) sought damages for the production of the following conditions in the units: dry rot, mold, mildew, fungus, temperature, climatic and energy conservation problems; and (c) asserted a claim on behalf of the individual homeowners for damages resulting from Imperial's and other defendants' negligence and lack of reasonable care in the design, installation, construction and implementation of the doors, roofs, ceilings and other improvements on the units.

It is also undisputed the complaint in the former action sought recovery for damages to products of Imperial and other defendants apart from the allegedly defective conditions. In this connection the complaint alleged: (a) Defective doors, roofs and ceilings have caused leakage into buildings; (b) Inadequate structural design and structural members have caused cracking, structural stress and other structural failure; (c) Defective soils beneath structures, sidewalks and pavements caused other structural failures; (d) Defective roof gutters and down spouts resulted in leakage; (e) Defective exterior walls and wall systems resulted in excessive moisture and staining; and (f) Defective balconies have resulted in leakage.

Maryland had issued Imperial comprehensive general liability insurance policies containing, among other exclusions, an exclusion under the heading "PERSONS INSURED" reading: "This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured."

In addition, in the "exclusions" section of the policies, there are included the following provisions which we label the "work product" exclusions: "This insurance does not apply:

". . . . . . . . . . . . . . . . .

"(n) to property damage to the named insured's products arising out of such products or any part of such products;

"(o) to property damage to work performed by or on behalf of the named insured arising out [of] the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

Another exclusion, labeled the "premises alienated" exclusion, provides the insurance does not apply: "(1) To property damage to premises alienated by the named insured arising out of such premises or any part thereof;"

The joint venture of which Imperial was a member developed the condominium complex in the early 1970's. Maryland issued the insurance policies for four consecutive years from March 1, 1977, through March 1, 1981.

According to a document entitled "JOINT VENTURE AGREEMENT CANYON WOODS INVESTORS," Imperial was a joint venture participant in the Canyon Woods condominium development along with Finance Leasing, Inc., each with a 50 percent interest.[1] In addition, Imperial was to receive a fee of 4 percent of total construction costs for indirect overhead expenses.[2] The Canyon Woods Investors joint venture was not designated in the policy as a named insured.

Imperial tendered the defense of the former action to Maryland which on July 9, 1984, had undertaken to defend Imperial under a written reservation of rights. On May 5, 1985, Maryland filed the present declaratory relief action disputing coverage under three policy exclusions, the joint venture exclusion, the work product exclusion and the premises alienated exclusion.

On March 24, 1986, at a special settlement conference in the former action, Maryland requested Imperial's consent to participate in a settlement of that action under a reservation of rights. At the special settlement conference on that date, Maryland's claims manager handed to counsel for Imperial a letter reading, in pertinent part: "The purpose of this letter is to advise you it is our understanding that this case may be in a position to be settled.

---

[1] The joint venture agreement provides, in part:
"PARTICIPANTS:
"The Joint Venture participants are Imperial Contracting Co., Inc., a California corporation, 50% interest, and Finance Leasing, Inc., a California corporation, 50% interest.
". . . . . . . . . . . . . .
"10. PROFITS AND LOSSES INCLUDING DISTRUBUTION [sic]:
". . . . . . . . . . . . . .
"b. The net profits of the Joint Venture shall be divided among the participants or reinvested as agreed, and the net losses shall be borne by them in the proportions set forth opposite their respective names:

| | |
|---|---|
| "IMPERIAL CONTRACTING CO., INC. | 50% |
| "FINANCE LEASING, INC. | 50%" |

[2] The joint venture agreement describes Imperial's fee as follows:
"8. DUTIES AND RESPONSIBILITIES:
"a. Imperial Contracting Co., Inc.:
". . . . . . . . . . . . . .
"Supervise and construct all improvements, including public and residential buildings.
"Imperial Contracting Co., Inc. is to receive a fee of 4% of total construction for indirect overhead expenses. Construction cost shall include cost of site improvements, cost of construction of living units, recreational facilities and other facilities related to the development of the property. Fee will be paid progressively based on billings submitted to the Venture by Imperial Contracting Co., Inc. for payment either directly or through the Fund Control."

The Maryland has been asked to have $113,850.00 available for the portion of the loss that falls within the Maryland's policy periods.

"We feel we must advise you of this and request your input as to the reasonableness of this amount. Do you have any objections to the Maryland paying this amount on your behalf, with the knowledge that we intend to proceed with the Declaratory relied [*sic*] action that has been filed in regards to the coverage questions under the policy?

"We need your authority and agreement to this settlement.

"I refer you to our Reservation of Rights letter dated July 9, 1984. We are still operating under that Reservation of Rights and the Maryland does intend to continue its action to recover any money it expends in settlement and attorney fees and costs.

"Again, I state if you have any objection as to the reasonableness of this proposed settlement, tell us now."

Imperial refused to consent to Maryland's participation in the settlement under a reservation of rights. In a March 26, 1986, letter to Maryland, Imperial stated, in part, "the proposed settlement is unreasonable, and the conduct of your client in refusing to settle the Canyon Woods Management claim is an act of paramount bad faith." The letter cites reasons for this statement, including recitations that: "The attorneys managing the construction case brought by Canyon Woods Management have done a superb job, and have obtained an offer from the plaintiff which, when shared among the various carriers, was well within policy limits. Since that offer was not accepted, plaintiff has served an Offer to Compromise which, though still within shared policy limits, is well in excess of the earlier offer. Maryland Casualty is the only one of the carriers which disputes coverage. By not coming to the table sooner, and taking advantage of plaintiff's earlier offer, Maryland Casualty has placed my client in the position where its risk may have been increased.

"     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"In addition to the legal impediments to a unilateral settlement, such a settlement would be another act of bad faith in respect to my clients, individual as well as corporate. The contemplated settlement would release the carriers not in privity with Imperial Contracting. Without being released, those carriers have sufficient coverage, and in my opinion an obligation, to settle the case or pay a judgment even in the absence of a voluntary

contribution by Maryland Casualty. If they are released as [a] result of the unauthorized activities of Maryland Casualty, it will create an hiatus in coverage which my clients will be expected to fill. Part of the duty of good faith and fair dealing is not to do any act which would cause unnecessary harm to the protected person. An unauthorized settlement by Maryland Casualty would create such a risk of harm."

On April 1, 1986, Imperial and the other defendants in the former action, Canyon Woods Investors, Finance Leasing, Inc. and John Burnham and Co., Inc., filed a motion for an order determining good faith settlement and for an order dismissing cross-complaints.

On April 3, 1986, also in the former action, Maryland filed a motion for a declaration of rights concerning the insurer's authority to participate in the settlement without Imperial's consent and under a reservation of rights. On April 24, 1986, the trial court entered an order granting Maryland authority to participate in the settlement without Imperial's consent and under the reservation of rights.

The April 24, 1986, order was made expressly without prejudice to Imperial's rights to litigate all issues, including liability and the amount of damages, in any later action to recover amounts paid in the settlement. The order states that Maryland may participate in the settlement, it does not waive its rights under the declaratory relief action and if it prevails in that action it may seek to recover all sums expended in settlement from its insured, Imperial.

The trial court reasoned as follows: Imperial "has not been surprised and that there is no unfairness in this settlement . . . ." By reserving Imperial's right to contest both liability *and* damages at a later date, no prejudice resulted in permitting Maryland to end the underlying litigation by advancing its own funds in settlement. The interests of both parties are thereby satisfied and protected. Maryland has limited the exposure by participating in the settlement with the five other carriers. Imperial may yet prove its nonliability and thus avoid any recoupment by Maryland. Imperial is protected also by the limit the settlement places on any subsequent recoupment by Maryland.

On May 7, 1986, the trial court entered an order that the settlement in the former action was reasonable and made in good faith.

On June 11, 1986, this court denied Imperial's petition for writ of mandate challenging the April 24, 1986, order granting authority to Maryland

to settle with reservation of rights and without Imperial's consent. The order states the petition is denied as there is an adequate remedy at law with the pending declaratory relief action.

On the reciprocal motions for summary judgment in the declaratory relief action of Maryland against Imperial, on April 16, 1987, the trial court ruled that under the exclusion relating to joint ventures contained in the policies of insurance there was no coverage. Thus, the trial court ruled Maryland had neither a duty to defend nor a duty to indemnify Imperial.

The trial court denied summary adjudication in favor of Maryland and granted summary adjudication in favor of Imperial on the following issue: "a. If the court determines that MARYLAND had no duty to indemnify IMPERIAL, then MARYLAND is entitled to be reimbursed for all settlement monies that it has paid on behalf of IMPERIAL in the Former [underlying] Action . . . ."

Continuing, the trial court ruled: "a. MARYLAND'S duty to defend IMPERIAL against the property damage claims asserted in the Former Action included a duty to settle the Former Action.

"b. Since MARYLAND had a duty to settle the Former Action it may not seek indemnity for its settlement share in the instant declaratory relief action."

Finally, the trial court granted summary adjudication in favor of Maryland and denied summary adjudication in favor of Imperial on the following issues: "a. The Policies' joint venture exclusion does not act to exclude coverage for property damage claims asserted against IMPERIAL in the Former Action, and

"b. MARYLAND had a duty to defend IMPERIAL against the property damage claims asserted in the Former Action . . . ."

In the hearing on the reciprocal motions for summary judgment, the trial court stated it was ruling against Maryland on the basis of the *Val's Painting* case (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 588 [126 Cal.Rptr. 267]) because, while there was obviously no agreement by which Imperial authorized the settlement, " . . . Maryland hasn't really shown me that they gave sufficient notice and opportunity to Imperial so they could take over and assume a defense."

Although the work product and premises alienated grounds for exclusion of coverage were submitted for summary adjudication, the trial court

declined to rule on those issues in light of its ruling on the joint venture exclusion ground.

On this appeal Maryland challenges the order's finding Maryland is not entitled to recover the settlement monies paid in favor of Imperial. Imperial's cross-appeal challenges the trial court's order on the coverage issue that the joint venture exclusion applies to bar coverage.

## DISCUSSION

### A

*Val's Painting* held: "Absent an agreement by the insured—express or implied in fact—that the insurer may commit the insured's own fund toward any reasonable settlement, the insurer is not permitted to seek reimbursement for a particular settlement unless it has secured specific authority to make that settlement or has notified the insured of a reasonable offer by the claimant and given the insured an opportunity to assume the defense." (53 Cal.App.3d at p. 588.)

The *Val's Painting* holding derives from *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883] and *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744]. *Comunale* holds an insurer denying coverage does so at its own risk and although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. (*Comunale, supra,* 50 Cal.2d at p. 660.) Accordingly, *Johansen* states, "an insurer's 'good faith,' though erroneous, belief in noncoverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer." (*Johansen, supra,* 15 Cal.3d at p. 16, fn. omitted.)

"The decisive factor in fixing the extent of [the insurer's] liability is not the refusal to defend; it is the refusal to accept an offer of settlement within the policy limits." (*Comunale, supra,* 50 Cal.2d at p. 659.) Using this quotation, *Johansen* answered the insurer's argument that *Comunale* applied only to cases where the insurer breaches both its duty to defend and its duty to settle. (*Johansen, supra,* 15 Cal.3d at p. 17.)

Answering the insurer's complaint that the *Comunale* rule requires an insurer to settle in all cases irrespective of whether the policy provides coverage, *Johansen* states: "Clearly, if defendant's belief that the policy did

not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle; all that *Comunale* establishes is that an insurer who fails to settle does so 'at its own risk.' Moreover, contrary to defendant's assertion, an insurer in defendant's position retains the ability to enter an agreement with the insured reserving its right to assert a defense of noncoverage even if it accepts a settlement offer. If, having reserved such rights and having accepted a reasonable offer, the insurer subsequently establishes the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured." (15 Cal.3d at p. 19.)

It was in this legal context that *Val's Painting* was decided. With the addition of the *Val's Painting* rule, the parties involved themselves in the settlement at issue here. *Val's Painting* was concerned that in the pleadings: "[T]here is no allegation in Allstate's pleading that Val's was informed of the settlement offer, that Val's expressly or impliedly agreed that the claimants should be paid a total of $3,200 as a reasonable settlement, that the settlement was reasonable, that Val's was given an opportunity to assume the defense if Val's did not think the settlement reasonable, or that Val's expressly or impliedly agreed that if such sum was paid the question of policy coverage should be left to future determination." (*Val's Painting, supra,* 53 Cal.App.3d at p. 588.)

*Val's Painting* permitted the insurer to amend its cross-complaint so as to plead allegations bringing it within the rule it stated allowing reimbursement after a settlement under a reservation of rights.

Here, we conclude the April 24, 1986, order expressly authorizing Maryland to participate in the settlement, followed by its carrying out that authority and entering a settlement found to be in good faith, fulfilled the concerns of *Val's Painting* and the law. Maryland "secured specific authority to make that settlement . . . ." (*Val's Painting, supra,* 53 Cal.App.3d at p. 588.) As the trial court noted, a different conclusion would run directly counter to the strong public policy favoring settlements. (See *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 794 [244 Cal.Rptr. 655, 750 P.2d 297].)

Here, Maryland, on July 9, 1984, wrote an 11-page letter to Imperial explaining that it was proceeding to defend Imperial in the pending action without waiving any rights under its policy and its conduct should not be construed as admitting coverage. It is clear that Maryland was proceeding under a reservation of rights. The record reflects that the parties operated under the reservation for about two years—until March 26, 1986—when

Maryland asked for Imperial's consent to the settlement. Imperial refused to consent. Conceptually this event required Maryland to choose among the following—it could turn over the defense to Imperial and await the outcome of the declaratory relief action; relinquish its earlier reservation of rights and acknowledge coverage; or proceed with the settlement in the manner which occurred here.

In practical terms, although Maryland had the menu of the foregoing choices, its decision had to be made in the context of Imperial's letter of March 26, 1986. Other than complaining about Maryland's bad faith, Imperial's failure to consent was tied solely to Maryland's failure to settle earlier for a more reasonable sum. In other words Imperial did not tell Maryland that it was not liable or that it wanted to take over the litigation.

Under the demand of the *Comunale* rule fixing as the decisive factor in determining insurer liability the refusal to settle within the policy limits, the insurer is required by law to pursue such a settlement, notwithstanding the presence of a coverage issue. As said in *Johansen* the insurer "retains the ability" to enter an agreement with the insured reserving its right to assert a defense of noncoverage even if it accepts a settlement offer. (*Johansen, supra,* 15 Cal.3d at p. 19.) However, in view of the insured's refusal to agree, Maryland properly sought and obtained trial court sanction to join in the settlement.

During Maryland's pursuit of the settlement and court authority to participate in it, Imperial was informed of and participated in procedures leading to the settlement. After the settlement was entered with court authorization, it was found to be reasonable and in good faith. Under this finding of a good faith settlement, made after due consideration of Imperial's arguments in opposition, it is properly to be concluded the insurer, with court authority, has carried out its obligations to its insured up to that point.

We conclude the order of April 24, 1986, authorizing Maryland to enter into the settlement, in the context of the full notice Imperial had concerning the settlement and its terms and Imperial's express rejection of Maryland's request for authority to enter the settlement, fully comports with the concerns underlying the *Val's Painting* rule. Under these circumstances it was unnecessary to give Imperial an opportunity to assume the defense. It follows the trial court erred in concluding Maryland was not entitled to seek reimbursement from Imperial for the amount of the good faith settlement subject to proof of Imperial's underlying liability and the extent of damages it caused Canyon Woods.

B

In *Western Employers Ins. Co.* v. *Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027, 1029 [194 Cal.Rptr. 688], the court held that exclusionary language identical to the work product exclusion in paragraph (o) of the policies here in question[3] is "plain" and "not only applies to the insured's defective work but also applies to the insured's satisfactory work that is damaged by the work that fails."

Thus, *Arciero* upheld a summary judgment in favor of the insurer under this language excluding coverage for structural damage to condominium units as well as damage to a retaining wall and slope all resulting from the retaining wall collapsing a few years after the project was completed. It was admitted the condominium owners suffered no personal injury or property damage other than the structural damage to their units.

*Arciero* explained the purpose of insurance policies of the type here in question, stating: " 'The risk intended to be insured is the possibility that the . . . work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself . . . .' [Citations.] The policy is neither a performance bond nor an 'all risk' policy. [Citation.] Rather, the effect of the policy is to make the contractor stand its own replacement and repair losses while the insurer takes the risk of injury to the property of others." (*Arciero, supra,* 146 Cal.App.3d at p. 1031.)

*Arciero* later points out that the general contractor is free to pursue indemnification from the subcontractors responsible for building the defective component of the work product of the general contractor. (*Id.* at p. 1032.)

So far as the record before the trial court showed, the only damages suffered were those to the insured's product, i.e., the insured's defective work and the insured's satisfactory work that was damaged by the work that failed. The single, nonspecific reference to damages to individual homeowners' "personal property" in the statement of undisputed facts does not sufficiently disclose the nature of the property damaged to give rise to a conclusion that property other than the insureds' work product is encompassed in the damages sought by the complaint in the former action.

---

[3] The work product exclusion in paragraph (o) of the policies here in question provides the policies do not apply: "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

Otherwise, the references to such things as doors, roofs and ceilings lead directly to the conclusion the insured's work product was the subject of the complaint for damages in the former action. Imperial does not direct us to any facts suggesting that damage occurred to anything other than Imperial's product.[4]

This being the case, on the record before us, as in *Arciero,* there is presented a pure question of law as to the application of the work product exclusion.[5] It is thus appropriate to apply the work product exclusion as the basis for affirming the trial court's summary judgment determination the policies did not provide coverage.

We have considered the parties' arguments, particularly those in response to our request for supplemental briefing. We find the arguments of Imperial unconvincing in light of the record before the trial court and this court.[6] That record leads to the conclusion as a matter of law the work product exclusion applies to bar coverage.

It must be emphasized that this conclusion is based solely on the record in this case to date. Imperial's obligation to pay $113,850 to Maryland, the amount of money which Maryland contributed to the total settlement, does

---

[4] The court has received supplemental briefing in response to its request that it be supplied with "specific evidence *in this record* which would substantiate [IMPERIAL' s] contention that the settlement encompasses damage beyond property constituting Imperial's work product." (Italics added.)

Imperial's response has included a motion for production of additional evidence on appeal, which we have denied. Obviously, the additional evidence sought to be presented is not "in this record." Otherwise, Imperial has not presented a showing of evidence in this record of damages to anything other than its work product.

[5] Imperial has cited *Central Mutual Ins. Co.* v. *Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916 [176 Cal.Rptr. 895], involving the same policy exclusions we consider here, and stating in dictum there were claims for damages to other property affected by the defective product as well as claims on behalf of purchasers of condominium units for such things as negligent design that would not be subject to the exclusions. (*Id.* at p. 928.) *Del Mar Beach Club* also suggested the presence of issues of material fact with the result that liability could not be resolved until the facts are made clear at trial. (*Id.* at p. 930.)

Aside from the nature of the statements as dictum, the record concerning the property damage sought in the *Del Mar Beach Club* case apparently disclosed the presence of issues of material fact. By contrast, the record here presents no such picture.

[6] A noteworthy example of an argument without record or substantive support is the following passage from Imperial's supplemental reply brief: "It is irrelevant whether the individual homeowner's cause of action 'consists of damage to tangible property which is not the product of the named insured. [Fn. omitted.]' The point is that the settlement encompassed payment for damage to the property of individual condominium owners (third persons). Such damage is neither to the property of the insured nor to the property of a third person, hence the work product exclusion does not apply. The work product exclusion is out of the picture before one gets to the question whether or not the property is part of the work product."

not, however, end this litigation. In light of the unique proceedings in this case, including the trial court's sole reliance on the joint venture exclusion in addition to its April 24, 1986, order expressly preserving Imperial's right to litigate *all* issues, Imperial should have the right to offset against this sum such damages which legitimately could have been allocated to portions of the policy providing for coverage. Obviously by the time of settlement in the circumstances of this case only Imperial had a financial interest in establishing such allocation. Because this issue has not been resolved and the court's order contemplates Imperial be given this opportunity, on remand Imperial may do so. Any such proof, if believed, would reduce the amount Imperial would be required to reimburse Maryland.

Having reached this conclusion, we need not address the joint venture exclusion which presents issues concerning coverage for (1) individual liability as distinguished from joint venture liability and (2) liability arising from individual conduct as opposed to joint venture conduct. (See *Austin P. Keller Const.* v. *Commercial Union* (Minn. 1986) 379 N.W.2d 533, 535-536 [57 A.L.R.4th 1147].)

### DISPOSITION

The judgment is affirmed insofar as it declares there is no coverage under the policies Maryland issued to Imperial. The judgment is reversed insofar as it declares Maryland is not entitled to recover from Imperial any amount of reimbursement as a result of the good faith settlement. The matter is remanded for further proceedings consistent with the views expressed in this opinion.

The parties to bear their respective costs.

Wiener, Acting P. J., and Work, J., concurred.