[S. F. No. 16557. In Bank.—Oct. 20, 1941.]

JOSEPH H. SMITH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Elvin B. Connolly and Frederick S. Farr for Petitioner.

Everett A. Corten and Edmund D. Leonard for Respondents.

CARTER, J.—Petitioner seeks annulment of an order of the Industrial Accident Commission denying him compensation.

Viewing the evidence most favorable to respondents it appears that petitioner, Joseph H. Smith, was employed as an unskilled laborer by the Golden Gate International Exposition on April 8, 1940, at Treasure Island in San Francisco Bay. His duties consisted of performing labor on various portions of the roads on Treasure Island, he being required to work in various places from time to time. He resided in San Francisco and traveled to and from the island by ferry boats not operated or controlled by his employer; his employer did, however, pay for his transportation. The entire island comprising several hundred acres, including the system of roads thereon, was under the control of the employer, the latter being engaged in conducting an exposition or fair thereon. The roads on the island were designed and being used for the accommodation of the public attending the exposition, employees of the Golden Gate International Exposition, persons connected with concessions, etc. The employees were required to check out at the end of each day's work at the employer's administration office situated on the northeast portion of the island. The terminal of the ferry boats used by petitioner to return to his home in San Francisco was on the west side of the island, more than one-half mile from the administration office. Generally one going from the administration building to the terminal would travel south on one of the north-south roads to its intersection with an east-west road, thence westerly

on the latter to the terminal. In order for the various crews of employees hired by the employer to travel about from one part of the island to the other to get from one assignment of work to another during the working day each crew was provided by the employer with a truck which was driven by the foreman of the crew. These trucks were not supplied by the employer for the purpose of carrying laborers from the administration building to the ferry terminal. On the day in question the petitioner, after his day's work, checked out at the administration office and started for the ferry terminal on the north-south road. When he was in the road in front of the office he saw a crew truck traveling in a southerly direction. The truck was one assigned to a carpenter crew and was being operated by the foreman thereof. Several employees were riding in the truck. He boarded the truck while it was in motion without the knowledge or express consent of the driver. When the truck reached the east-west road intersection it turned east, the direction opposite to the terminal which was petitioner's destination and he jumped from the truck while it was in motion and in so doing suffered the injuries for which he sought compensation. Up to the time of the injury petitioner was traveling the most direct route to the terminal. The employer had not issued any orders prohibiting the employees from riding on the trucks to or part way to the terminal. It was the practice of employees to ride in said trucks either all or part of the way.

With the facts being as above stated, the respondent commission found that "Said injury did not arise out of nor occur in the course of the employment, nor while performing any service incidental thereto." It is respondents' position that the application of the going and coming rule prevents an award of compensation to petitioner. We cannot agree.

It may be observed with reference to petitioner's riding upon the employer's truck, that it is the general rule that when transportation is furnished by the employer to convey a workman to and from his place of work, as an incident of the employment, and the means of transportation are under the control of the employer, an injury sustained during such transportation arises in the course of employment and is compensable. (*Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 Pac. 654]; *Dellepiani* v. *Industrial*

*Acc. Com.,* 211 Cal. 430 [295 Pac. 826].) But the transportation furnished must be connected with the employment or as said in *Trussless Roof Co.* v. *Industrial Acc. Com.,* 119 Cal. App. 91, 93 [6 Pac. (2d) 254]:

"The use of the words 'as such' is necessary because courtesy rides given by the employer do not give rise to liability under the statutes. (*Boggess* v. *Industrial Acc. Com.,* (1917) 176 Cal. 534 [L. R. A. 1918F, 883, 169 Pac. 75]; *Gruber* v. *Mercy,* (1929) 7 N. J. Misc. Rep. 241 [145 Atl. 106].) In other words, the transportation has to be furnished as a part of the contract of employment, to come within the rule. (*In re Donovan,* (1914) 217 Mass. 76 [Ann. Cas. 1915C, 778, 104 N. E. 431].)" ■ In the instant case the transportation facility, the truck, although owned and controlled by the employer, was not furnished by it under any agreement for transporting employees from the administration office to the ferry terminal. There are present however, two other factors of importance. It was the custom of the employees to ride in the trucks to the terminal after checking out, and the roads traveled were all a part of the employer's premises, that is, Treasure Island, upon which the exposition was being conducted. These factors will be considered in connection with the discussion later herein dealing with the employer's premises, and whether petitioner left the employment when he boarded the truck. It also may be pointed out that the fact that the employer reimbursed the employee for his fare on the ferry from the island to San Francisco would not of itself cause the injury to arise out of the course of employment. ■ The payment to the employee of the cost of public transportation to and from his place of residence to the place of work does not ordinarily in itself, furnish a basis for concluding that an injury sustained during such transportation arose out of the course of employment. (*Trussléss Roof Co.* v. *Industrial Accident Commission, supra.*)

■ The rule is, that it is not necessary for an injury to be compensable that it occur before the employee shall have left the actual point where he has been working, and before he actually ceases to render service. Injuries sustained by an employee while going to or from his place of work upon premises owned or controlled by his employer are generally deemed to have arisen out of and in the

course of the employment and are thus compensable. (*Makins* v. *Industrial Acc. Com.*, 198 Cal. 698 [247 Pac. 202, 49 A. L. R. 411]; *Jimeson* v. *Industrial Acc. Com.*, 23 Cal. App. (2d) 634 [73 Pac. (2d) 1238]; *Judson Mfg. Co.* v. *Industrial Acc. Com.*, 181 Cal. 300 [184 Pac. 1]; *Bountiful Brick Co.* v. *Giles*, 276 U. S. 154 [48 Sup. Ct. 221, 72 L. Ed. 507].)

 In the instant case the entire island and system of roads thereon were under the control of the employer and used by it in the conduct of the exposition. Petitioner's duties took him to various parts of the island as the assignments of work demanded. He was injured while leaving the island and had not loitered thereon after having checked out at the administration office. He was leaving the premises by the most direct route and via the roads, the only means provided for egress therefrom. Under these circumstances we believe that petitioner was on his employer's premises and leaving by the means provided therefor when the injury was sustained, and that it may be said that it was contemplated by the employer that he would still be in its employment until he embarked on the ferry boat to leave the island, the employer's premises, which he did by the only and most reasonable route available. In *Lynch* v. *City of New York*, 242 N. Y. 115 [151 N. E. 149], the city of New York maintained a hospital and grounds on an island in East River. A nurse there employed was injured when walking on a sidewalk on the island while going to one of the public facilities to leave the island for New York City. The court of appeals in affirming an award of the State Industrial Board stated:

"But going to and coming from work becomes an incident of the employment when the employee is within the precincts of the employer. . . . The city is the employer in this case. The rule here stated would be pushed to an illogical and absurd extreme if it were applied to all the sidewalks of New York over which city employees might pass on their way to and from their work. But the city maintains a plant on Welfare Island, and within that plant the employee is exposed to the hazards peculiar to the employment as well as the hazards of life in general. The hazards of the employment are analogous to those of an employee in a manufacturing plant or railroad shop. The location of the hospital was such as to make the boat the customary and practical

way of ingress and egress. The walk to the boat landing was as much a part of the plant as the hospital itself. Although claimant was not at work when the accident happened, the employment necessarily contemplated that claimant should from time to time leave the island and return as much as it contemplated that she should work there. A reasonable interval of time for the purpose was therefore within the necessary scope of the employment.'' In *McDonald* v. *Richardson County*, 135 Neb. 150 [280 N. W. 456], an office employee of the county working in the courthouse was injured while leaving on a driveway from the building to the street. The court there said at page 458:

''In this case Byrd McDonald was not in the courthouse for her own personal reasons. She was in the building because she was employed there. For that reason she was on the driveway on the grounds. It was necessary as a part of her employment that she come and go across the grounds after leaving the public street. *To urge that she had a right to go upon the premises as a member of the public is, we think* putting too narrow a construction upon the meaning of the compensation act as to what is or is not within the course of employment. An employee is required to cross the grounds of the premises of employer. An employee leaving the premises of her employer in the usual and customary way after her work is ended is within the course of her employment within the meaning of the workmen's compensation law. Walking to and from the street and a building where one is employed is a necessary incident of the employment, and an injury sustained in so doing is compensable.''

Respondents make much of the fact that the roads on the island in the instant case were used by the public attending the exposition and employees of concessions thereon, as well as employees of the Golden Gate International Exposition. That factor is not decisive when it is remembered that the employment necessarily contemplated that the employees must leave the island to return home, that the roads were under the control of the employer, and that therefore, their employment necessarily required that they use the roads on the island; no other means were available. Traveling over those roads to reach the public transportation facilities for leaving the island together with the dan-

gers attendant therewith was therefore incident to the employment. ■ The island was and the roads thereon were controlled by the employer, and the court may take judicial notice that the only members of the public that could also use the roads were those willing and able to pay the admission charge made by the employer for entry on the island and to visit the exposition there conducted, or those given permission so to enter by the employer. ■ Merely because the public by permission used the roads did not make them public highways. The island and its system of roads was not unlike a manufacturing plant. (*Lynch* v. *City of New York, supra;* see also: *Wilson Berger Coal Co.* v. *Brown,* 223 Ky. 183 [3 S. W. (2d) 199].) There is nothing in the case of *London etc. Co.* v. *Industrial Acc. Com.,* 173 Cal. 642 [161 Pac. 2], cited by respondents contrary to the views herein expressed. There the work had ended and there was no evidence that the leaving of the premises by the workman to return home was incidental to the employment. The general statement therein that the fact that the employee was still on the employer's estate does not of itself make the injury compensable, is probably correct, but that does not mean that that factor considered with others will not make an injury compensable.

Respondents refer to authorities to the effect that an employee of a city engaged in street work in a certain part of the city, who receives injuries while going to or from his home on city streets cannot recover compensation. We are not here called upon to decide that question. From what we have heretofore said such a case is clearly distinguishable from the case at bar. (See also: *Lynch* v. *City of New York, supra.*)

■ It cannot be said that the fact that petitioner rode on the truck rather than walked bars his recovery on the ground that he stepped out of the course of his employment. This is true because the evidence showed that it was the custom of employees to obtain such rides and the employer had not given any orders prohibiting the practice. (See *Associated Indemnity Corp.* v. *Industrial Accident Com.,* 18 Cal. (2d) 40 [112 Pac. (2d) 615].) ■ That petitioner boarded a moving truck and jumped from it while it was moving is not significant. It is nothing more than a charge of negligence on his part which is no defense in proceedings

for workmen's compensation. (*California C. I. Ex.* v. *Industrial Accident Com.,* 5 Cal. (2d) 185 [53 Pac. (2d) 758]; *Associated Indemnity Corp.* v. *Industrial Accident Com., supra.*)

The order is annulled.

Traynor, J., Moore, J., *pro tem.,* and Pullen, J., *pro tem.,* concurred.