[No. G042799. Fourth Dist., Div. Three. Apr. 8, 2011.]

AMERICAN MODERN HOME INSURANCE COMPANY, Plaintiff and Appellant, v.
SOHAIL FAHMIAN et al., Defendants and Respondents.

**COUNSEL**

Haight Brown & Bonesteel, David W. Evans and Bruce Cleeland for Plaintiff and Appellant.

Maziar Mafi for Defendants and Respondents.

**OPINION**

**FYBEL, J.—**

### INTRODUCTION

Sohail Fahmian was sued for injuries suffered by a worker on a residence Fahmian and his company were building. Fahmian tendered the matter to

his homeowners insurance company, American Modern Home Insurance Company (American Modern), which accepted the defense of the personal injury lawsuit, subject to a reservation of rights. American Modern later determined a policy limits settlement demand of $300,000 by the injured worker was reasonable, and notified Fahmian in writing, pursuant to *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489 [106 Cal.Rptr.2d 535, 22 P.3d 313] (*Blue Ridge*), that it intended to accept the settlement demand unless Fahmian would either take over his own defense, or waive any later bad faith claim based on the failure to settle the action.

Fahmian did not respond to American Modern's offer. American Modern then settled the underlying action with the worker and sued Fahmian for reimbursement. A jury found there was no coverage for the personal injury action under the American Modern insurance policy. The jury also found that Fahmian did not have sufficient time to make a reasoned reply to American Modern. Based on this finding, the trial court denied American Modern's claim for reimbursement, and entered judgment in favor of Fahmian.

 We reverse. Under binding California Supreme Court authority, an insurance company may obtain reimbursement from its insured for a policy limits settlement, when it is determined the underlying claim was not covered by the policy, if the insurance company (1) made a timely and express reservation of rights, (2) provided express notification to the insured of the insurer's intent to accept the proposed settlement offer, and (3) made an express offer that the insured could assume its own defense. In this case, American Modern did all of the foregoing. We decline to add any additional requirements. This conclusion is mandated by the *Blue Ridge* opinion itself because of its analysis and because the timing of the insurer's offer to the insureds and the deadlines given by the insurer in *Blue Ridge* were essentially the same as in this case. As *Blue Ridge* makes clear, it is a timely and express reservation of rights letter that is determinative. For the reasons we discuss, we hold the trial court erred by imposing an additional requirement, not authorized by the Supreme Court's opinion or rationale, that the insured have "sufficient" time to respond to the insurer's offer.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Fahmian is the owner of Provident Housing, Inc. (Provident). American Modern provided a homeowners insurance policy to Fahmian (the policy). The policy specifically excluded coverage for any liability arising out of Fahmian's business.

On April 5, 2005, Rudy Montoya sued Fahmian and Provident for injuries suffered as the result of being shot in the eye with a nail gun (the Montoya action). The accident occurred on the premises where Fahmian and Provident were building a house for the purpose of selling it. Fahmian tendered the lawsuit to American Modern, which accepted Fahmian's defense under a reservation of rights. Fahmian did not read the reservation of rights letter.

Montoya's attorney presented a settlement demand to American Modern for the policy limits—$300,000. On July 1, 2005, American Modern informed Fahmian in writing that it intended to accept the policy limits settlement demand unless Fahmian either agreed to undertake his own defense in the Montoya action, or waive any potential claims based on the failure to settle the Montoya action within the policy limits (the settlement advisement letter). The settlement advisement letter informed Fahmian that Montoya's settlement demand would expire by its terms on July 8, 2005, and American Modern therefore required Fahmian's response to the settlement advisement letter by 4:00 p.m. on July 6, 2005. The settlement advisement letter was delivered via Federal Express at 10:42 a.m. on July 2, and was signed for by "S. Fahmian." Fahmian, however, testified he never read it.

On July 5, 2005, Fahmian telephoned American Modern's coverage counsel, David Evans, and requested that the settlement advisement letter and its attachments be transmitted to him via electronic mail, so he could forward the documents to his counsel. The requested documents were transmitted electronically the same day. During that telephone conversation, Evans told Fahmian he could call Evans until the morning of July 8 with his decision.

American Modern did not receive any communication from Fahmian or any attorney purporting to represent him after July 5. Because American Modern did not hear from Fahmian by July 8, 2005, it accepted the policy limits settlement demand in the Montoya action.

On November 14, 2005, American Modern sued Fahmian for declaratory relief, seeking a declaration that the Montoya action was excluded under the policy, and for reimbursement of the monies it had paid to settle that action. The case proceeded to a jury trial, after which the jury completed a special verdict form. After posttrial hearings, the trial court concluded, based on the jury's findings, that although the Montoya action was not covered under the policy, and American Modern had made a timely and express reservation of rights, American Modern was not entitled to reimbursement because it had not provided Fahmian "sufficient time" to make a reasoned reply to the offer to assume his own defense if he disagreed with the decision to settle.

It is especially noteworthy that the trial court did not make any declaration of rights as requested in the complaint and as it should have adjudicated. In our disposition, we direct the trial court how to declare those rights.

Judgment was entered on August 25, 2009; American Modern timely appealed.

DISCUSSION

I.

STANDARD OF REVIEW

The issue on appeal involves pure questions of law, and is reviewed de novo. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 [72 Cal.Rptr.3d 112, 175 P.3d 1170].)

II.

SPECIAL VERDICT FORM

A. *Contents of the special verdict form and the jury's answers*

The jury answered the 13 questions on the special verdict form, as follows:

"1. On July 11, 2004, was the home at 29119 Avenida de las Flores connected to all utility services?

"Yes _____ No _X_

"2. On July 11, 2004, was 29119 Avenida de las Flores the primary residence of Sohail Fahmian?

"Yes _____ No _X_

"3. Did American Modern make a timely and express reservation of rights?

"Yes _X_ No _____

"4. Did American Modern expressly notify Sohail Fahmian of American Modern's intent to accept the settlement offer made on behalf of Mr. Rudy Montoya?

"Yes _X_ No _____

"5. Did American Modern make an express offer to Sohail Fahmian that he could assume his own defense should American Modern and Sohail Fahmian disagree w[h]ether to accept the proposed settlement made on behalf of Mr. Rudy Montoya?

"Yes __X__ No _____

"6. Did Sohail Fahmian timely instruct American Modern not to pay the $300,000 'policy limits' demand *and* confirm that by his decision he would waive any claim against American Modern arising from his instruction not to pay Mr. Rudy Montoya?

"Yes _____ No __X__

"7. Did Sohail Fahmian, before or after the injuries to Mr. Rudy Montoya, intentionally conceal or misrepresent any material fact or circumstance; engage in fraudulent conduct; or make false statements relating to the insurance contract?

"Yes __X__ No _____

"8. If your answer to question no. 7 is yes, what was the statement(s) or conduct?

"Mr. F did not inform American Modern of the incident that happened on his property on 7/11/06[.]

"9. Was Lamborn Insurance Services an agent of American Modern?

"Yes __X__ No _____

"10. Did American Modern give Sohail Fahmian reasonably sufficient information for Sohail Fahmian to make a reasoned decision based on the options provided in the July 1, 2005 letter?

"Yes __X__ No _____

"11. Under all circumstances, did American Modern provide sufficient time for Sohail Fahmian to make a reasoned reply?

"Yes _____ No __X__

"12. Did Sohail Fahmian build the 29119 Avenida de las Flores address for a business purpose?

"Yes __X__ No _____

"13. Did Sohail Fahmian build the 29119 Avenida de las Flores address for his personal residence?

"Yes _____ No _X_ "

B. *What was the jury's role as described on the record?*

Given that the only claims asserted in the complaint were equitable in nature, why was a jury empanelled? Before trial, the parties and the trial court discussed the possibility that Fahmian might raise as a defense that American Modern had been negligent, and agreed that the factual issues presented by such a defense required a jury.

During posttrial hearings, American Modern's counsel stated, "the jury is to decide questions of fact which were extremely limited in the case. The court then takes those facts and applies them to the law. That was the purpose of the paperwork. And we believe that the facts that the court needed were there and are there. And the finding of the jury on that question, I believe question number 11, is irrelevant to the law and was requested by the court, not defense counsel, and was requested after the close of evidence, after the resting of the case in chief by all parties and the close of evidence."

The trial court expressed its opinion as to the procedural status of the jury's special verdict, as follows: "I think this is a slightly different animal, theoretically, since the action is for declaratory relief, something or other that typically does not allow for a jury determination. [¶] They made it clear that when effectively the declaratory relief action is something akin to or it involves an issue which is basically a legal action, in other words, a contractual type of case, that then you're entitled to have a jury decide the issues of fact, and then the court . . . makes the determination. [¶] The thing that I have not been able to determine to my satisfaction is how much that particular scenario differs from the scenario where you try a case to a jury and you go with a special verdict; so essentially you're asking the jury to make certain discrete factual findings. And then the court, assuming everything has happened the way that it's supposed to in terms of the instructions and special verdict, all that's left for the court is to enter judgment. [¶] . . . [T]he declaratory relief situation is the same as it would be in the case of a jury trial using a special verdict, essentially you've got to ask the jury to decide all the factual things you want decided, leaving for the court no factual determinations to make but only legal conclusions to draw."

## III.

### TRIAL COURT'S REASONING

After the jury rendered its special verdict, the trial court conducted posttrial hearings and reviewed posttrial briefs by the parties before reaching its conclusions of law and entering judgment. At the final hearing on the issue, the court presented its reasoning, as follows: "[I]n the current state of affairs, everything that the jury determined would allow the court to enter judgment for American Modern Home Insurance, the plaintiff . . . . I think I've laid out essentially the factual story that would entitle them to a judgment, but for the court's view—and I'll be happy to hear you one more time, but I think we've talked about this quite a bit, and I think we continue to differ on our viewpoint. [¶] I think the one thing we can agree on, there is no affirmative case law in the area. . . . [¶] And the closest we could get on anything as precedent for my view on *Blue Ridge* is the *Coe . . . v. State Farm* [(1977)] 66 Cal.App.3d 981 [136 Cal.Rptr. 331], that talks about reasonable notice in a different context, albeit, being an underpinning of the concept of the covenant of good faith and fair dealing. [¶] And that is a gloss on *Blue Ridge* that the *Blue Ridge* notice has to give the insured a reasonable amount of time to make a reasoned decision on the *Blue Ridge* options, or it is tantamount to not supplying the options that the *Blue Ridge* court said had to be given to the insured. [¶] So under that analysis, the additional question that the court had answered by the jury . . . was did he have sufficient time . . . to make the determination based on the notice, and they said no."

The trial court's minute order reads, in relevant part, as follows: "[B]ased on factual issues submitted to the jury and its findings, Fahmian purchased homeowners insurance from American Modern Home, a worker was severely injured on a home he was constructing for commercial purposes and sued with a reservation of rights, the worker offered to settle the case for policy limits, American Modern Home notified Fahmian of the offer in a letter that complied with the information requirements under *Blue Ridge* but did not provide Fahmian a reasonable amount of time to select an option, Fahmian did not respond within the time American Modern Home gave him to do so, and American Modern Home paid policy limits and sued to recover that amount from Fahmian; when giving *Blue Ridge* notice the insurer must give the insured a reasonable amount of time to select an option (c.f., *Coe v. State Farm Mut. Auto. Ins. Co.*[, *supra*,] 66 Cal.App.3d 981, 994); because American Modern Home did not give Fahmian a reasonable amount of time to decide, Fahmian is not liable to American Modern Home."

# IV.

## FORFEITURE

Fahmian argues the inclusion of question No. 11 on the special verdict form was not objected to by American Modern, and the issue has therefore been forfeited. The appellate record, however, shows that American Modern did object to question No. 11, although that objection was apparently part of an unreported discussion between the court and counsel. During the posttrial hearings, American Modern's counsel stated, "that was a specific question that the court asked to be included *over my objection*," to which the court replied, "*the jury got to decide that one question*, albeit at the court's—*over your objection*." (Italics added.) Later, during that same hearing, the court noted, "I think *this is a well preserved issue*. I think you certainly have— *you've objected to any instruction*. You've given me your theory. You've done everything possible to convince me. We disagree on this particular part of it." (Italics added.)

During oral argument on appeal, Fahmian's counsel asserted his recollection of the proceedings was that American Modern never made an objection to the inclusion of question No. 11, and this court should consider only the lack of an objection on the record, because the recollections of the trial court and counsel that an objection was made, as reflected *ante*, are inaccurate. Counsel did not, however, claim in the trial court that the acknowledgements by the court and counsel of objections raised were in any way inaccurate.

We emphasize that this debate over whether an objection was made could and should have been avoided if the trial court and counsel had put the objection and ruling on the record immediately after the chambers conference.

Additionally, American Modern preserved the issue by raising it in its posttrial briefs. (See *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1557 [107 Cal.Rptr.3d 307] [the defendant preserved issue based on improper special verdict findings by raising it in a motion for judgment notwithstanding the verdict]; *All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1220 [228 Cal.Rptr. 736] [challenge to form of special verdict preserved by raising it in motion for a new trial].)[1]

---

[1] When the issue is whether a question was omitted from a special verdict form, the issue must be raised before the jury is discharged. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 131 [41 Cal.Rptr.2d 295].)

## V.

### BLUE RIDGE

In *Blue Ridge*, the California Supreme Court considered whether an insurer defending a personal injury suit under a timely presented reservation of rights may recover from the insureds the settlement payments made to the plaintiffs in the underlying action, when the insureds objected to the settlement, if the claims are later determined not to be covered under the policy. (*Blue Ridge, supra*, 25 Cal.4th at p. 492.) The court held that the insurer could obtain reimbursement for a reasonable settlement payment, made over the insureds' objection, if it first offered the insureds the chance to assume their own defense. (*Id.* at pp. 492–493.)

"As noted, the issue here is whether Blue Ridge [Insurance Company] may seek reimbursement for the settlement paid on the Jacobsens' behalf even in the absence of the Jacobsens' express agreement. We conclude it may. Here, the Jacobsens were on notice both by the policy language and by Blue Ridge's express reservation of rights when it assumed the defense that Blue Ridge might seek reimbursement from them for what were ultimately determined to be noncovered claims. Moreover, Blue Ridge notified the Jacobsens of its intention to accept what was ultimately determined to be a reasonable settlement offer, and offered the Jacobsens the opportunity to assume their own defense. Under such circumstances, Blue Ridge satisfied the prerequisites for seeking reimbursement for noncovered claims included in a reasonable settlement payment: (1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement." (*Blue Ridge, supra*, 25 Cal.4th at p. 502.)

Here, too, Fahmian was on notice by the policy language and American Modern's timely reservation of rights letter that American Modern might seek reimbursement from Fahmian for any uncovered claims. American Modern advised Fahmian it intended to accept Montoya's settlement offer, and offered Fahmian the opportunity to take over his own defense; American Modern also offered to continue defending Fahmian if he would agree to waive any claims for bad faith arising out of a failure to settle the Montoya action within the policy limits.

■ While *Blue Ridge* requires that the insurer's reservation of rights must be *timely and express*, it requires only that the notice of the insurer's intent to

settle and its offer that the insured may assume its own defense be *express*. (*Blue Ridge, supra*, 25 Cal.4th at p. 502.) It is fair to conclude, based on the language used in the opinion as well as the court's overall analysis, that the Supreme Court did not intend to include a requirement of sufficient time for the insured to consider the notice of intent to settle and offer to the insured to assume its own defense. Indeed, a plaintiff's settlement offer might come at any time and usually contains its own time limits; therefore, a defendant and its insurer might have little or no control over the deadline to respond to that offer. Nevertheless, the trial court required that American Modern provide Fahmian with a reasonable time to respond to the offer.

Fahmian claims the complexity of the options presented in the settlement advisement letter, and his lack of separate coverage counsel, made the July 8, 2005 response date unreasonable. The glaring problem with this argument is that in the *reservation of rights letter*, American Modern's coverage counsel advised Fahmian that it was accepting the defense of the Montoya action subject to a full reservation of rights, and that defense counsel appointed by American Modern would not be able to advise Fahmian regarding coverage issues. Thus, the reservation of rights letter gave Fahmian ample notice of his right to retain coverage counsel, should he so desire. This advisement is consistent with the *Blue Ridge* court's emphasis on the need for a timely reservation of rights letter. The insured cannot be permitted to derail the *Blue Ridge* process by failing to obtain separate coverage counsel until a request for consent to settle is received, and then claiming insufficient time to respond to that request due to lack of such counsel.[2]

In *Blue Ridge*, the insurer informed the insureds on June 4, 1996, that it believed the policy limits settlement demand was reasonable, and that it would settle the matter for that amount while reserving its right to seek reimbursement from the insureds unless they opted to assume their own defense. (*Blue Ridge, supra*, 25 Cal.4th at p. 494.) The settlement offer by the plaintiffs in the underlying action was set to expire on June 12, and the insurer informed the insureds it would assume they did not object to the settlement subject to the reservation of rights, unless it heard from them by June 10. (*Ibid.*) The opinion does not provide any information regarding the means of transmission of the June 4 letter, so we cannot be sure when and by whom

---

[2] In *Blue Ridge*, the insurer appointed independent defense counsel for the insureds. (*Blue Ridge, supra*, 25 Cal.4th at p. 493.) The Supreme Court's opinion notes that "counsel for the Jacobsens" responded to the request for consent to settle, and to Blue Ridge's subsequent communications regarding the issue of settlement. (*Id.* at p. 494.) It would appear, but it is not certain, that the insureds retained separate coverage counsel sometime after receiving the insurer's reservation of rights letter.

that letter was received. It is clear that it was received, however, because the insureds responded on June 10 by refusing to either consent to settlement or accept the defense. (*Id.* at pp. 494–495.)[3]

There is no appreciable difference between the time the insureds had to respond to the insurer's letter in *Blue Ridge*, and the time Fahmian had to respond to the settlement advisement letter in this case. In *Blue Ridge*, the insurer requested a response from the insureds six days after the date of its settlement advisement letter, to enable the insurer to meet the plaintiffs' response date, which was two days later. In the present case, American Modern requested a response from Fahmian five days after the date of the settlement advisement letter, to enable American Modern to meet Montoya's response date, which was two days later. We observe that the time given to the insureds to respond to the settlement advisement letter in both cases was dependent on the timing in the plaintiffs' settlement demands.

The rule of *Blue Ridge* has two important purposes: (1) avoiding unjust enrichment on the part of an insured that was not covered for the underlying loss in the first place, and (2) encouraging the resolution of lawsuits by settlement. As the *Blue Ridge* court noted: "[I]n addition to avoiding the insured's unjust enrichment, a rule allowing unilateral reservation of the right to seek reimbursement of settlement payments for noncovered claims advances significant public policy considerations. In particular, it encourages insurers to defend and settle cases for which insurance coverage is uncertain. In so doing, it transfers from the injured party to the insurer the risk that the insured may not be financially able to pay the injured party's damages. Although the insurer may preserve its right to seek reimbursement from its insured, as a practical matter the insured may not have the assets necessary to compensate the insurer in full or even in part." (*Blue Ridge, supra*, 25 Cal.4th at p. 503.) The addition of a fact-intensive inquiry into the sufficiency of the time to respond to a settlement advisement letter would undermine both of those purposes, and would ultimately result in harm to third party plaintiffs with valid claims against insureds whose coverage is unclear.

We hasten to add that our holding is premised on the insurer's timely provision of a settlement advisement letter to the insured, after receiving the plaintiff's settlement demand. As noted *ante*, the applicable timeframe in this case is not appreciably different from the timeframe in *Blue Ridge*.

---

[3] The settlement offer by the plaintiffs in the underlying action was extended, but this merely resulted in another exchange of letters requesting and refusing to consent to settle. (*Blue Ridge, supra*, 25 Cal.4th at pp. 495–496.) This different factual situation does not affect our analysis of *Blue Ridge*.

A review of the cases on which the Supreme Court relied in *Blue Ridge* is instructive. In *Val's Painting & Drywall, Inc. v. Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 588 [126 Cal.Rptr. 267] (*Val's Painting*), the appellate court held: "Absent an agreement by the insured—express or implied in fact—that the insurer may commit the insured's own fund toward any reasonable settlement, the insurer is not permitted to seek reimbursement for a particular settlement unless it has secured specific authority to make that settlement or has notified the insured of a reasonable offer by the claimant and given the insured an opportunity to assume the defense." The *Val's Painting* court emphasized the need to notify the insured of the settlement offer and to provide the insured with the opportunity to assume the defense, without even discussing whether the insured must be provided sufficient time to make a reasoned reply.[4]

In *Maryland Casualty Co. v. Imperial Contracting Co.* (1989) 212 Cal.App.3d 712, 715–716 [260 Cal.Rptr. 797] (*Maryland Casualty*), the insured was sued in a construction defect case, and tendered the defense of the action to its comprehensive general liability insurer. The insurer accepted the defense under a reservation of rights, and later filed a separate declaratory relief action disputing coverage. (*Id.* at p. 716.) The insured refused to consent to the insurer's participation in a settlement of the underlying action that would be under the policy limits; the insurer sought the insured's consent through a letter presented to the insured's counsel at a special settlement conference. (*Id.* at pp. 716–717.) The trial court, at the insurer's request, issued an order permitting the insurer to participate in the settlement without the insured's consent and subject to the reservation of rights. (*Id.* at p. 718.) The insurer thereafter participated in the settlement, and sought reimbursement of the amounts paid in the declaratory relief action.

The insurer appealed from the judgment entered in the declaratory relief action, which concluded there was no coverage for the underlying action, but the insurer could not recover the amount paid in settlement because the insurer had not shown it gave the insured sufficient notice and an opportunity to assume its own defense. (*Maryland Casualty, supra,* 212 Cal.App.3d at p. 719.) The appellate court reversed the portion of the judgment declaring the insurer was not entitled to reimbursement from the insured of the settlement monies. (*Id.* at p. 725.) "We conclude the order . . . authorizing [the insurer] to enter into the settlement, in the context of the full notice [the

---

[4] The sufficiency of the time provided to the insured to determine whether to undertake its own defense, however, was not specifically before the court. After detailing the transmission and contents of the reservation of rights letter, the court merely noted, "Allstate thereafter settled the [actions]." (*Val's Painting, supra,* 53 Cal.App.3d at pp. 580–581.)

insured] had concerning the settlement and its terms and [the insured]'s express rejection of [the insurer]'s request for authority to enter the settlement, fully comports with the concerns underlying the *Val's Painting* rule. Under these circumstances it was unnecessary to give [the insured] an opportunity to assume the defense." (*Id.* at p. 722.) Although the request for consent to settle was only provided to the insured's counsel at the settlement conference, the *Maryland Casualty* court did not discuss whether the insured was provided a reasonable or sufficient time to respond.

In *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1377, 1391 [25 Cal.Rptr.2d 242], the appellate court concluded the insurer could not seek reimbursement of the policy limits paid in settlement of the underlying action because the insurer accepted the defense without a reservation of rights, and settled the underlying action without the insureds' consent. The court concluded there was substantial evidence to support the trial court's finding that the insurer did not give the insureds "a reasonable opportunity to assume their own defense" based on the insurer's failure to (1) reserve its rights when it accepted the defense of the action, (2) mention potential noncoverage until two months before trial, and (3) mention to the insureds its intent to settle the case without the insureds' consent until trial was underway. (*Id.* at p. 1391.)

■ In each of the three cases on which the California Supreme Court relied in its *Blue Ridge* decision, the court's focus was on the timeliness and completeness of the initial reservation of rights. We therefore conclude that a determination whether the insurer provided the insured with sufficient time to respond to a settlement advisement letter issued pursuant to *Blue Ridge* is not required. In this case, the trial court erred by imposing such an additional requirement.

*Coe v. State Farm Mut. Auto. Ins. Co.*, *supra*, 66 Cal.App.3d 981 (*Coe*), on which the trial court relied, is inapposite. In that case, after a serious automobile accident, counsel for one driver's heirs made a policy limits settlement demand on the insurer for the other driver. (*Id.* at pp. 985–987.) The insurer refused to respond to the settlement demand, in part because the settlement offer did not specify that its acceptance would absolve the insured driver of liability to the State Compensation Insurance Fund (SCIF), leaving her exposed to a further action to recoup any monies the SCIF paid to the injured party or his heirs (*id.* at p. 994); the accident had occurred while the injured driver was acting within the course and scope of his employment (*id.* at p. 985). The injured driver's heirs obtained a verdict far in excess of the insurance policy limits, and accepted an assignment of the injured driver's

bad faith claim against the insurer. (*Id.* at p. 988.) The appellate court concluded the insurer could not be liable for bad faith: "Absent the offered and guaranteed written consent of the [SCIF] in [the] 'offer' of April 4, 1968, acceptance by [the insurer] of the 'offer' would have left [the insured] exposed to a recoupment action by the fund. . . . [¶] Accordingly, acceptance by [the insured] of the 'offer,' as made, would have amounted to an abdication of its responsibilities to its own insured. Specifically, it would have breached its 'implied covenant of good faith and fair dealing' not to 'injure' her rights under its policy [citation], and its obligation 'to consider the interests of the assured equally with its own.' [Citation.] Bad-faith refusal to accept a settlement offer cannot occur where 'acceptance' would itself be bad faith." (*Id.* at p. 994.)

The trial court in this case relied on a different portion of the *Coe* opinion: "[The insurer] contends that under the evidence it did not in fact 'refuse' [the] 'offer,' but only requested more time and information in its reply letter. It is on this point that [the insured's assignee] makes her questionable claim of bad faith on the basis of [the insurer]'s mere 'failure to accept' the 'offer.' Whether [the insurer] 'refused' the 'offer,' and whether it could reasonably have acted otherwise in light of the 11-day deadline imposed by the offer's terms, were questions for the jury. Reversal is not indicated by [the insurer]'s contentions on this point alone." (*Coe, supra,* 66 Cal.App.3d at p. 994.) *Coe* does not hold that an insured must be provided sufficient time to reasonably respond to a settlement demand within policy limits, nor does it hold that an insured must be provided sufficient time to respond to its insurer's request for consent to accept a settlement demand within policy limits.

### DISPOSITION

The judgment is reversed. We direct the trial court to enter judgment in favor of American Modern and against Fahmian and Provident as follows: (1) judicially declare that the policy did not cover liability incurred by Fahmian's business pursuits; (2) judicially declare that the Montoya action arose out of or was connected to Fahmian's business pursuits; (3) judicially declare that the property was owned by Fahmian and/or Provident for the purpose of sale for profit; (4) award American Modern reimbursement from Fahmian of (i) the $300,000 paid to settle the Montoya action, and (ii) the fees and expenses that the trial court determines are reimbursable under the

terms of the policy, and that were incurred by American Modern in connection with the defense of the Montoya action, as well as prejudgment interest at the legal rate from and after July 8, 2005; and (5) award costs to American Modern. Appellant to recover costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 29, 2011, S193143. Corrigan, J., did not participate therein.