Filed 1/29/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| CRAIG SCHULTZ, | B255678 |
| Petitioner, | (W.C.A.B. No. ADJ582920) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and JOINT TEST TACTICS AND TRAINING (JT3) et al., | **ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |
| Respondents. | |


It is ordered that the opinion filed herein on January 6, 2015, be modified in the following particulars:

On page 10, the first full sentence of the first paragraph reads: "There is no dispute in this case about the facts that pertain to the premises line rule." The sentence should be replaced with: "There is no dispute in this case about the facts that are material to the premises line rule."

On page 14, the following paragraph should be inserted as the last paragraph of the "Analysis" section:

Finally, we reject JT3's contention (citing *Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 314) that the California Supreme Court decision in *Santa Rosa Junior College v. Workers' Comp. Appeals Bd., supra,* 40 Cal.3d 345, precludes

liberal construction of the Workers' Compensation Law in regard to determining whether the premises line rule applies.  Not only did the court in *Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* specifically state that the premises line rule was not "invoked" by the facts of that case, in a lengthy footnote the court explained the benefits of the premises line rule while citing numerous cases in which the premises line rule had been "reaffirmed."  (*Id.* at p. 353 and fn. 11.)  We are satisfied that our opinion is consistent with our Supreme Court's liberal construction of the application of the premises line rule.

There is no change in judgment.  The petition for rehearing is denied.

_____

TURNER, P. J.                    MOSK, J.                    KRIEGLER, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CRAIG SCHULTZ,<br><br>  Petitioner,<br><br>  v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and JOINT TEST TACTICS AND TRAINING (JT3) et al.,<br><br>  Respondents. | B255678<br><br>(W.C.A.B. No. ADJ582920) |

PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board.  Annulled and remanded with directions.

Asvar Law, Christopher A. Asvar, Jonathan J. Perez, for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

England, Ponticello & St. Clair and Terry S. Wheaton for Respondent Joint Test Tactics and Training (JT3) and The Hartford.

_____

Under the "going and coming rule" an award of workers' compensation benefits is generally not available for injuries suffered by an employee during a local commute to a fixed place of business at fixed hours, because the injury does not occur during the ordinary course of employment. However, the ordinary course of employment is deemed to commence when an employee enters the employer's premises (the premises line rule), and at that point, the going and coming rule does not bar workers' compensation liability. We hold that the premises line rule applies to an employee injured in a single-car traffic accident where (1) the employee was a civilian working on a secure United States Air Force base not generally open to the public, (2) the employee entered the base in his personal vehicle after passing a guard gate using a security pass issued by his employer with the approval of the Air Force, (3) the employee had travelled one mile inside the base when the accident occurred, and (4) the undisputed evidence established although the employee worked out of a fixed location, the employer had multiple locations on the Air Force base and the employee travelled sometimes in his own vehicle, as needed, throughout the base to perform work assigned by his employer. We therefore annul the decision of the Workers' Compensation Appeals Board (WCAB) denying benefits under the going and coming rule.

## PROCEDURAL HISTORY

Petitioner Craig Schultz filed an application for workers' compensation benefits after suffering injuries in a traffic accident while driving his personal vehicle on the premises of Edwards Air Force Base (Edwards), where he worked for respondent Joint Testing Tactics and Training (JT3). In his written brief before trial, Schultz argued that the going and coming rule did not preclude workers' compensation liability because use of Schultz's personal vehicle was (1) an express or implied condition of employment, and (2) an accommodation to JT3, even if not a condition of employment.

2

JT3 filed an interim trial brief. JT3 argued the accident occurred before Schultz had started work, and at a location inside Edwards but seven miles from the building where Schultz was employed at Edwards. JT3 also attributed the accident to Schultz's diabetic condition. JT3 disputed that Schultz was injured during the course of employment.

On the final day of trial testimony, the Workers' Compensation Judge (WCJ) ordered the parties to file posttrial briefs by June 18, 2013. The case would be deemed submitted after briefing was complete.

JT3 filed its posttrial brief on June 17, 2013. JT3 argued the going and coming rule precluded workers' compensation benefits because Schultz's injuries did not occur in the course of employment. JT3 contended it did not agree to allow Schultz to use his private vehicle for work, and the accident occurred during Schultz's regular commute. Schultz, as well as other JT3 employees, was not required to bring a personal vehicle to work, and there were government cars available for use by JT3 employees at Edwards. Schultz worked at a fixed location on the base, which is not where he was injured. In addition, the injuries did not arise out of employment, but were caused by Schultz's "idiopathic" condition (diabetes).

Schultz filed his posttrial brief on June 18, 2013. He argued that JT3 expressly and impliedly required Schultz to make his personal vehicle available as an accommodation to the employer, which negates application of the going and coming rule. He further argued JT3 had not shown this accident was the result of an idiopathic condition. Additionally, Schultz devoted seven pages of his posttrial brief to the argument that the premises line rule applied in this case. He was on JT3's premises at the time of the injury, meaning as a matter of law the employment relationship had begun for the day. Schultz noted that he was one mile onto the premises at Edwards when injured, and he was only allowed on the base due to the security pass he received from JT3 in connection with his employment.

On September 30, 2013, the WCJ ruled in favor of Schultz. The WCJ rejected JT3's reliance on the going and coming rule and idiopathic injury. The WCJ credited

3

evidence that Schultz at times used his vehicle for the benefit of the employer, which precluded application of the going and coming rule. The WCJ did not address Schultz's premises line rule argument.

JT3 sought reconsideration of the ruling of the WCJ. The WCJ filed a lengthy written opinion recommending against reconsideration. The WCAB granted reconsideration and reversed the decision of the WCJ, stating: "The problem with the WCJ's analysis is that it focuses on how the employer might possibly benefit by having applicant bring his car to work instead of considering why applicant was in his car on May 24, 2010, and what he was actually doing at the time he crashed." According to the WCAB's analysis, the undisputed evidence showed that Schultz was driving his personal car outside of work hours when he crashed during his morning commute to work. There was no evidence that at the time of the injury Schultz was performing a service growing out of and incidental to his employment, or that Schultz was required to bring his car to work or that he was expected to run errands in it on a regular basis. Occasional use of an employee's car for work purposes does not render the employer liable for any injury the employee incurs in the course of commuting to work. Rejecting the factual findings of the WCJ, the WCAB concluded JT3 had vehicles that were almost always available for use, and work could be postponed if no vehicle was available. The injury here occurred outside of work hours and not while Schultz was on a special mission or errand for JT3. The WCAB ordered entry of new findings of denial of workers' compensation benefits. The WCAB opinion did not mention Schultz's premises line rule argument.

Schultz petitioned for writ of review in this court, arguing that he was in the course of employment at the time of the accident and the going and coming rule did not bar liability because (1) he used his personal vehicle at various times to accommodate JT3, acting with JT3's express or implied agreement, and (2) once he entered the secure area of Edwards, he had arrived at work under the premises line rule. We granted Schultz's petition for writ review. We agree that the undisputed facts demonstrate that the premises line rule, rather than the going and coming rule, applies to the facts of this

4

case.  We therefore annul the decision of the WCAB that Schultz did not establish an exception to the going and coming rule.

**TESTIMONY BEFORE THE WORKERS' COMPENSATION JUDGE**

*Schultz's Accident*

Schultz was employed as a drafter by JT3, working out of Building No. 1440 at Edwards.  On May 24, 2012, Schultz drove his personal vehicle onto Edwards, passing the guard gate using the security pass provided by JT3.  Schultz was about one mile past the gate when he experienced pain and pulled over.  His foot hit the gas pedal instead of the brake pedal.  His car went into a ditch and flipped over.  He was hospitalized with severe injuries.  The accident scene was located about three to five miles from Schultz's work destination at Building No. 1440.

*JT3's Presence at Edwards*

The witnesses at trial provided generally consistent accounts of JT3's operation at Edwards.  Frederick Idemoto, who worked with Schultz as a drafter at JT3, testified that there were "probably 200 people in the company."  Idemoto, like Schultz, worked out of Building No. 1440.  Edwards consisted of the north, the south, and the main bases.  The workers "are not all located in one building.  They are spread all over the base."  "[O]nce in a while the draftsman would go out and do a field survey."  There were "a variety of buildings on the base where [Idemoto] would go to examine the site for purposes of documenting."  There were occasions when the drafters would accompany an engineer to a location when an engineer wanted to document a portion of the site.  Idemoto testified to working at various locations at Edwards, including South Base, the West Gate, and the East Range.

Schultz testified that JT3 has clients at Edwards, including the Air Force and government personnel on the base. Schultz personally interfaced with clients. Part of his job was to document building sites, elevations, and equipment installations at different areas around the base. Schultz kept a detailed log book of his travel for tax purposes, because he was not reimbursed for use of his personal vehicle. He would go off site from his building to another location at Edwards "once or twice a month." Two or three time a week Schultz would go off site to attend lunch meetings at a cantina in Rosamond. He prepared a map, on 20 separate pages, showing his job sites on the base. According to Schultz's log book and his testimony, which the WCJ found credible, while Schultz was working for JT3 he used his personal car for five visits to the East Range, seven trips to the West Gate, three drives to the Test Pilot School, five trips to the North Building, and three to South Base. There were other occasions when Schultz did work at these locations but did not use his own vehicle for transportation.

Michael Johnson worked as an engineer for JT3. He worked with Schultz in Building No. 1440, but also did work at the Precision Impact Bombing Range, at South Base at the Birk Flight Test Facility, and at the Test Pilot School. He went with Schultz, in Schultz's personal car and with his supervisor's approval, to the Birk Flight Test Facility. Johnson made site visits in the course of his employment, and on occasion needed a drafter depending on the assignment. Lunches were sometimes held on base at the Officers' Club, where informal discussions took place involving work and other matters such as sports. He does not recall if the drafters were at the lunches. While working for JT3 there were seven field engineers and nine technicians in his department. Government owned vehicles were available for use by JT3's employees.

Paul David Johnston, Schultz's supervisor, testified that Schultz worked in Building No. 1440, but from time-to-time drafters were asked to go "off-site" to perform their work, meaning they would work within Edwards but outside of Building No. 1440. Drafters sometimes went with the engineers off-site to clarify details on projects. Government vehicles were available to get to the off-site locations. Weekly off-site

6

lunches at the Officers' Club were held, which drafters sometimes attended. Everything was discussed at the lunches, including movies and other things.

*Additional Trial Testimony*

A large portion of the trial testimony centered on Schultz's use of his personal vehicle while working at Edwards for JT3. JT3 took the position that it never required Schultz to bring his personal vehicle to work, there were government vehicles available if needed, and use of a personal vehicle was not approved. Schultz, on the other hand, testified to his use of his personal vehicle, with the knowledge of JT3, when visiting sites throughout Edwards.

All of the witnesses, including Schultz, agreed that employees were not told they were required to bring a personal vehicle to work. Schultz presented evidence that priority for use of government vehicles went to engineers and technicians before drafters. Schultz supported his claim that he used his personal vehicle on multiple occasions by producing a detailed log book going back to 2008 in which he documented his trips to sites at Edwards, generally once or twice a month. Schultz testified to the specific dates he used his personal vehicle to travel throughout Edwards to perform his job.

Idemoto testified that drafters would do work as requested by engineers and also complete other graphics work. He confirmed that vehicles were assigned to engineers and technicians, but not to drafters, and on some days no cars were available for drafters to use. He and Schultz were the only two employees of JT3 he knew to use their personal vehicles on base.

Johnson also confirmed there were government vehicles for use although they were not always available. Schultz drove Johnson using Schultz's personal vehicle three or four times to obtain therapy for his shoulder. This was done with the approval of a supervisor.

Johnston testified that permission was required to use a personal vehicle for JT3 work, and Johnston did not recall permission being given, because it would have been a

7

violation of policy. He did not recall Schultz asking for permission to use his car. Johnston never requested workers to bring their own vehicle to use at work. Personal vehicles were used for Friday off-site lunches, which sometimes included discussions about work.

## DISCUSSION

In his petition for writ of review, Schultz argued, inter alia, that he is entitled to workers' compensation benefits because his injury occurred on JT3's premises and thus he was injured in the course of his employment. Schultz asserted it is undisputed that JT3 has multiple locations within Edwards and employs more than 200 people in multiple buildings across the base. JT3 has multiple clients, both civilian and military, situated throughout Edwards. JT3 employees eat and have meetings on the base, and obtain supplies from a store at Edwards. Edwards is a restricted location that can only be entered with security clearance issued by an employer or the United States government. According to Schultz, the entire base is JT3's premises. The accident happened one mile inside the North Gate, meaning it occurred on JT3's premises, and not while Schultz was commuting to its premises. The going and coming rule does not apply under these circumstances.

JT3 filed an answer to Schultz's petition for writ of review. JT3 argued that Schultz had not raised the premises line rule before the WCJ and had not filed an opposition to reconsideration, thereby waiving the issue. According to JT3, Schultz "never raised the issue of employer premises at the trial level." On the merits of the premises line argument, JT3 limited its discussion to one sentence, stating that Schultz "did not demonstrate facts at trial that he was at his workplace when he entered the North Gate of Edwards Air Force Base."

In his reply brief, Schultz disputes JT3's contention that the issue of the premises line rule was never raised in the trial court. Schultz points to the seven pages of argument

in his posttrial brief specifically relying on the premises line rule to demonstrate the issue was raised before the WCJ.

*Forfeiture*

JT3 is correct that issues not raised in the trial court are generally forfeited for purposes of appeal. "Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing." (*Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011; see *People v. Valdez* (2012) 55 Cal.4th 82, 142 [objections not raised in the trial court will not be addressed on appeal].) However, the rule has no application in this case.

Schultz clearly identified the premises line issue in his posttrial brief as a basis for liability. Issues raised in posttrial briefs are preserved for review on appeal. (*American Modern Home Ins. Co. v. Fahmian* (2011) 194 Cal.App.4th 162, 170, citing *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1557, and *All–West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1220.)

JT3's also contends that Schultz waived his premises line rule contention by failing to file an opposition to reconsideration, citing to language in Labor Code section 5904. This is incorrect. Under Labor Code section 5904, "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration." The petitioner for reconsideration in this case was JT3, not Schultz, and the waiver rule of Labor Code section 5904 does not under the plain language of the statute apply to Schultz's failure to file an opposition. The issue has not been forfeited by Schultz.

9

*Standard of Review*

Liability exists "against an employer for any injury sustained by his or her employees arising out of and in the course of the employment" without regard to negligence. (Lab. Code, § 3600, subd. (a).) "Where, as here, there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law and a purported finding of fact on that question is not binding on an appellate court." (*Reinert v. Industrial Acc. Commission* (1956) 46 Cal.2d 349, 358; accord *Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 351; see *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1298 [de novo review applies to legal conclusions of the WCAB].) There is no dispute in this case about the facts that pertain to the premises line rule. The Workers' Compensation Law is liberally construed, and "[a]ny doubts as to the [going and coming] rules application are to be resolved in favor of coverage." (*Price v. Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 559, 565; Lab. Code, §3202 [The provisions of the act "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment"].)

*The Going and Coming Rule and the Premises Line Rule*

The California Supreme Court "adopted the 'going and coming rule' as an aid in determining whether an injury occurred in the course of the employment." (*Santa Rosa Junior College v. Workers' Comp. Appeals Bd.*, *supra*, 40 Cal.3d at p. 348.) "The going and coming rule precludes compensation for injury suffered during the course of a local commute to a fixed place of business at fixed hours in the absence of exceptional circumstances. (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157.)" (*General Ins. Co. v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 598.) "For purpose of the rule, the employment relationship does not begin until an employee enters the employer's premises. Prior to entry, the going and coming rule ordinarily precludes

10

recovery; after entry, injury is generally presumed compensable as arising in the course of employment. (*Pacific Indem. Co. v. Industrial Acc. Com.* (1946) 28 Cal.2d 329, 336; *Cal. Cas. Ind. Exch. v. Ind. Acc. Com.* (1943) 21 Cal.2d 751, 755; 1 Larson, Workmen's Compensation Law (1972) §§ 15.00-15.11, pp. 4-2-4-4.) The employer's premises include his parking lot as well as plant or office, and once the employee has reached the premises, employment is not interrupted by crossing public property while travelling from one part of the premises to another. (*Lewis v. Workers' Comp. Appeals Bd.* (1975) 15 Cal.3d 559, 563.)" (*General Ins. Co. v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at pp. 598-599.)

Our Supreme Court has held that an employee arrives at work when she parks in a parking lot provided by the employer that is located blocks away from where the actual work is performed. An injury suffered while traversing a public street on the way to work from that parking lot is during the course of employment. (*Lewis v. Workers' Comp. Appeals Bd., supra,* 15 Cal.3d at p. 561.) "'"[E]mployment" has been held to include "not only the doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done." [Citations.]' [Citation.]" (*Parks v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585, 590.) That an injury occurs before work hours begin does not preclude workers' compensation liability. (*Price v. Workers' Comp. Appeals Bd., supra,* 37 Cal.3d 37 Cal.3d at p. 566 [recovery not barred where injury was suffered after employee arrived at work but before doors to workplace were unlocked].)

In several cases, our Supreme Court has rejected application of the going and coming rule when an employee is injured while driving a vehicle into the employer's premises. (*Greydanus v. Industrial Acc. Com.* (1965) 63 Cal.2d 490, 492-493 (*Greydanus*); *Pacific Indem. Co. v. Industrial Acc. Com., supra,* 28 Cal.2d at pp. 335-336.) These cases recognize that where an employee is required to access the employer's property by a specific means, an injury occurring during the course of entry into the property, even if on a public highway, is considered to have occurred in the course of employment under the premises line rule. (*Greydanus*, *supra*, at pp. 492-493.)

11

"The liability of an employer for injuries sustained by his employees on the employment premises is exceedingly broad. Extending his liability to the total premises is somewhat arbitrary but as a practical measure is well established." (*North American Rockwell Corp. v. Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154, 159.)

*Analysis*

Although Schultz was assigned to a particular building on Edwards, it is undisputed that he and other employees of JT3 performed work at multiple locations at the base at various times. Edwards is a secure location, and JT3 controlled Schultz's access to the base, which he could only enter with a security pass issued by JT3 and approved by the Air Force. Because JT3 controlled Schultz's access to Edwards, and Schultz worked throughout the base on assignments, he was on the premises of his employer once Schultz entered Edwards, and his injury therefore occurred during the course of that employment for purposes of the workers' compensation law.

Our determination that Schultz is entitled to workers' compensation benefits is guided by three factors: (1) the required liberal construction of the workers' compensation law; (2) the narrow construction given application of the going and coming rule; and (3) the reasoning of our unanimous Supreme Court in *Smith v. Industrial Acc. Com.* (1941) 18 Cal.2d 843 (*Smith*).

*Smith*, *supra*, 18 Cal.2d at p. 845, involved an employee of an exposition held in 1940 at Treasure Island in San Francisco Bay. The employee travelled to and from Treasure Island by ferry from San Francisco. The roads on Treasure Island were under the control of the exposition, and were used to accommodate the public attending the exposition, employees of the exposition, and persons working at concessions at the event. At the end of the work day employees would check out at the administration office. The ferry terminal was located more than one-half mile from the administration office. The exposition provided trucks to transport its workers to various parts of the island to perform their assignments during the work day, but these trucks were not supplied to

12

transport workers from the administration building to the ferry terminal after work. The injured employee checked out at the administration office and started to walk toward the ferry terminal, but he took advantage of a passing work truck and jumped on the back along with the work crew. The employee was injured when he jumped from the moving truck while it was in motion. (*Id.* at pp. 845-846.) The Industrial Accident Commission denied benefits on the ground the injury did not arise out of nor occur in the course of the employment, applying the going and coming rule to prevent an award of compensation. The Supreme Court reversed. (*Id.* at p. 846.)

The *Smith* court acknowledged that the exposition did not furnish transportation to the ferry as a part of the contract of employment, but identified two factors that justified compensation—it was the custom of the employees to ride in the trucks to the terminal after checking out, and the Treasure Island roads traveled were all a part of the employer's premises. (*Smith*, *supra*, 18 Cal.2d at p. 847.) These two factors established that the accident occurred on the employer's premises and during the course of employment. (*Id.* at pp. 847-848.)

"In the instant case the entire island and system of roads thereon were under the control of the employer and used by it in the conduct of the exposition. Petitioner's duties took him to various parts of the island as the assignments of work demanded. He was injured while leaving the island and had not loitered thereon after having checked out at the administration office. He was leaving the premises by the most direct route and via the roads, the only means provided for egress therefrom. Under these circumstances we believe that petitioner was on his employer's premises and leaving by the means provided therefor when the injury was sustained, and that it may be said that it was contemplated by the employer that he would still be in its employment until he embarked on the ferry boat to leave the island, the employer's premises, which he did by the only and most reasonable route available." (*Smith*, *supra*, 18 Cal.2d at p. 848.)

The fact that the roads on the island were used by the public attending the exposition and employees of concessions, as well as employees of the exposition, did not preclude liability. "[T]he employment necessarily contemplated that the employees must

13

leave the island to return home, that the roads were under the control of the employer, and that therefore, their employment necessarily required that they use the roads on the island; no other means were available. Traveling over those roads to reach the public transportation facilities for leaving the island together with the dangers attendant therewith was therefore incident to the employment. The island was and the roads thereon were controlled by the employer, and the court may take judicial notice that the only members of the public that could also use the roads were those willing and able to pay the admission charge made by the employer for entry on the island and to visit the exposition there conducted, or those given permission so to enter by the employer. Merely because the public by permission used the roads did not make them public highways." (*Smith*, *supra*, 18 Cal.2d at pp. 849-850.)

If anything, the instant case is more compelling than *Smith* on the issue of defining the premises of JT3 as Schultz's employer. Unlike the roads on Treasure Island in *Smith*, to which the public had access, it is undisputed that Edwards is a secure military facility which the public could not normally enter. Schultz's access to Edwards was controlled by JT3. It was the security pass issued by JT3 as part of Schultz's employment that provided the means for Schultz's entry to Edwards. Schultz and other JT3 employees worked in various parts of the base as required by his job, suggesting the entire base be considered Schultz's place of employment. (See *Smith*, *supra*, 18 Cal.2d at p. 848.) Although Schultz was not required to bring his personal vehicle to work, he was required to traverse a secure area of Edwards to reach Building No. 1440, and his employment necessarily contemplated that he use the roads on Edwards, as no other means of reaching his main work location are suggested by the record. (See *Ibid*; *Greydanus*, *supra*, 63 Cal.2d at pp. 492-493 [liability imposed where worker was required to turn left off of public highway to access employer's premises].) That Schultz was driving his personal vehicle at the time of the accident is of no moment in the analysis of the application of the premises line rule, because regardless of his means of travel to Building No. 1440, Schultz would have been on the secure premises of Edwards owing only to his status as a JT3 employee. For purposes of the premises line rule, it does not matter whether Schultz

14

was permitted to use his own car to perform work, as he contended, or if that was not permitted as maintained by JT3, as the record clearly shows that Schultz was required to work throughout Edwards at times and his work was not confined merely to Building No. 1440. Schultz was on JT3's premises for purposes of employment when injured.

## DISPOSITION

The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion.


KRIEGLER, J.


We concur:


TURNER, P. J.


MOSK, J.


15